# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| APRIL STIEFEL HAWKINS, )<br>)<br>**Claimant,** )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner, Social Security )<br>Administration, )<br>)<br>**Defendant.** ) | Case No. 4:17-cv-2136-CLS |

## MEMORANDUM OPINION

Claimant, April Stiefel Hawkins, commenced this action on December 19, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) improperly considered the opinion of her treating physician; (2) improperly considered her lack of medical treatment; (3) failed to find that she met the requirements of Listings 12.04 and 12.06; (4) entered a residual functional capacity finding that was not supported by substantial evidence; (5) failed to include all of her impairments in the hypothetical question to the vocational expert; (6) improperly evaluated her subjective complaints; and (7) failed to adequately consider her medication side effects. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision is due to be affirmed.

## A.  Treating Physician Opinion

Claimant first asserts that the ALJ improperly considered the opinions of Dr. Ochuko Odjegba, her treating physician. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the

doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision on that issue is not a medical question, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d) & 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

The record contains three assessments from Dr. Odjegba. He completed a form entitled "Request for Medical Information Work Requirements" for the State of Alabama Department of Public Health Food Stamp Program on March 7, 2014. He

3

checked a box indicating that claimant was not able work, and then explained that her limitations were due to lumbago, generalized osteoarthritis, and fibromyalgia. She had experienced those conditions for "years," and would continue to suffer from them permanently.[1]

Dr. Odjegba also completed a "Physical Capacities Form" on June 2, 2015. He indicated that claimant could sit for thirty minutes at a time and stand and walk for fifteen minutes at a time. She would have to lie down, sleep, or sit with her legs propped up for three hours during an eight-hour work day. Her limitations existed back to October 1, 2012, and they would continue for twelve or more months. The limitations were caused by back and knee pain, and the medications claimant took for her conditions caused sedation, nausea, and vomiting.[2]

Dr. Odjegba completed a second "Physical Capacities Form" on November 2, 2016. He indicated that claimant could sit, stand, and walk for thirty minutes at a time. She would have to lie down, sleep, or sit with her legs propped up for four hours during an eight-hour work day. Her limitations existed back to October 1, 2012, and they would continue for twelve or more months. The limitations were caused by cervicalgia, backache, fibromyalgia, and generalized osteoarthritis. The

---

[1] Tr. 1083.
[2] Tr. 1334.

medications claimant took for her conditions caused sedation and drowsiness.[3]

The ALJ afforded only little weight to Dr. Odjegba's opinions. The ALJ did not credit Dr. Odjegba's statement that claimant was unable to work because that is an issue reserved to the Commissioner. He also explained that Dr. Odjegba

> attempted to relate mental limitations but is not qualified to give such an opinion. Dr. Odjegba has also opined that the claimant is unable to sit, stand, or walk for longer than 30 minutes, which is not supported by any of his findings during the relevant period . . . . He remarked that the claimant's medications cause sedation, drowsiness, nausea, and vomiting, although his treatment notes reveal no such complaints.

Tr. 94 (record citation omitted). The ALJ thus adequately articulated his reasons for not fully crediting Dr. Odjegba's opinions.

Claimant argues that the ALJ's decision nonetheless was not supported by substantial evidence because Dr. Odjegba's treating records reflect that claimant consistently received treatment for cervical and thoracic spine pain, and she reported pain scores of six or higher on at least twenty-six occasions between 2005 and 2013. Claimant also points to her fibromyalgia diagnosis and to MRI and x-ray results that reveal spondylitic changes and scoliosis in her spine. Even so, the mere existence of a medical condition, or of some pain resulting from that condition, does not support a finding of disability. Neither does claimant's subjective assessment of her pain level. Instead, the relevant consideration is the effect of claimant's condition,

---

[3] Tr. 1439.

considered in combination with any of her other impairments, on her ability to perform substantial gainful work activities. *See* 20 C.F.R. §§ 404.1505(a) & 416.905(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)) (alteration supplied). Even though there may be *some* subjective evidence in the record to support Dr. Odjegba's assessment, there is *substantial* evidence to support the ALJ's decision to afford only little weight to that assessment.

Claimant also asserts that the ALJ improperly afforded more weight to the opinion of Dr. Samuel Williams, the state agency consultant, than it did to Dr. Odjegba's opinion. As an initial matter, the ALJ only afforded Dr. Williams's assessment "some weight," which is not much more than the "little weight" he afforded to Dr. Odjegba's assessment. Moreover, the ALJ did not specifically rely upon Dr. Williams's opinion as a factor in deciding to reject Dr. Odjegba's opinions. Finally, the ALJ was entitled to afford more weight to the opinion of a non-examining

physician than to the opinion of a treating physician if the non-examining physician's opinion was more consistent with the medical evidence.

## B. Lack of Medical Treatment

Claimant also argues that the ALJ improperly drew adverse inferences from her lack of medical treatment. The only time the ALJ mentioned claimant's lack of treatment was in the following context:

> Moreover, there is no objective support for [claimant's] allegations of disabling mental symptoms. The claimant has been noted to demonstrate inadequate attention at only one encounter during the relevant period, undermining her complaints of an inability to concentrate . . . . *She has also gone without mental health treatment for much of the relevant period, but she generally demonstrates an appropriate mood and affect with memory intact. . . .*

Tr. 94 (alteration and emphasis supplied, record citations omitted).

It is true that "poverty excuses [a claimant's] noncompliance" with medical treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (alteration supplied). Thus, "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)). The Eleventh Circuit has also held that "when an ALJ relies on noncompliance as the *sole ground* for the denial of disability benefits, and the record contains evidence showing

that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins,* 848 F.2d at 1214) (emphasis supplied).

As an initial matter, it does not appear that the ALJ actually drew an adverse inference from claimant's lack of medical treatment. He did not find that claimant's complaints of mental health symptoms should not be fully credited because claimant had not sought enough treatment. Instead, he considered that, even for someone who had received only limited mental health treatment, claimant did not display symptoms consistent with disabling limitations.

Moreover, even if the ALJ had drawn an adverse inference from claimant's lack of treatment, and even if her lack of treatment was the result of financial difficulty, the ALJ's decision would have been, at most, harmless error. Claimant's failure to seek additional mental health treatment was far from the sole reason that the ALJ denied claimant's disability benefits. The ALJ also considered claimant's reported activities, other medical conditions, and medical records.

## C. Mental Health Listings

Claimant next asserts that the ALJ should have found her disabled under Listings 12.04 and 12.06. Listing 12.04, addressing affective disorders, requires

proof of:

> 1. Depressive disorder, characterized by five or more of the following:
>    a. Depressed mood;
>    b. Diminished interest in almost all activities;
>    c. Appetite disturbance with change in weight;
>    d. Sleep disturbance;
>    e. Observable psychomotor agitation or retardation;
>    f. Decreased energy;
>    g. Feelings of guilt or worthlessness;
>    h. Difficulty concentrating or thinking; or
>    i. Thoughts of death or suicide.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04A (listings) (the "A criteria").

Additionally, a claimant must show:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04B (listings) ("B criteria").

Alternatively, even without satisfying the A and B criteria, claimant can demonstrate a mental disorder that is

> "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and

9

that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04C (listings) ("C criteria").

Listing 12.06, addressing anxiety related disorders, requires proof of:

Medical documentation of the requirements of paragraph 1, 2, or 3:

1. Anxiety disorder, characterized by three or more of the following;

    a. Restlessness;
    b. Easily fatigued;
    c. Difficulty concentrating;
    d. Irritability;
    e. Muscle tension; or
    f. Sleep disturbance.

2. Panic disorder or agoraphobia, characterized by one or both:

    a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or

    b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3. Obsessive-compulsive disorder, characterized by one or both:

    a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or

> b. Repetitive behaviors aimed at reducing anxiety.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06A (listings) ("A criteria"). Additionally, a claimant must show:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06B (listings) ("B criteria"). Alternatively, a claimant can demonstrate that her mental disorder is

> "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06C (listings) ("C criteria").

The ALJ found that claimant had only moderate impairment in the functional areas included in the "B criteria" of both listings. With regard to the "C criteria," the ALJ found that claimant had more than marginal adjustment abilities. Accordingly,

the ALJ found that claimant did not satisfy the requirements of either Listing 12.04 or Listing 12.06.[4]

Claimant challenges the ALJ's finding, but she does not actually explain why she satisfied these listings. Instead, she simply summarizes her mental health treatment records and her hearing testimony about panic attacks. There is no question that claimant has received treatment for mental health conditions, and the ALJ accounted for claimant's depression, anxiety, and panic disorder by limiting her to unskilled work that does not require complex instructions or procedures, or any more than occasional interaction with the general public.[5] But claimant has failed to satisfy the burden of establishing that she suffers from any listed impairment.

**D.     Residual Functional Capacity Finding**

The ALJ found that claimant retained the residual functional capacity

> to perform light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b) not requiring complex instructions or procedures; no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; frequent handling bilaterally; occasional stooping, crouching, crawling, or kneeling; frequent interaction with co-workers and supervisors; and occasional contact with the general public.

Tr. 91. Claimant asserts that the residual functional capacity finding is "simply conclusory and does not contain any rationale or reference to the supporting evidence,

---

[4] Tr. 90.
[5] Tr. 91, 94.

12

as required by SSR 96-8p."[6] Social Security Ruling 96-8p states, in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> *Symptoms*. In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
>
> • Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
>
> • Include a resolution of any inconsistencies in the evidence as a whole; and
>
> • Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

---

[6] Doc. no. 11 (Claimant's Brief), at 36.

SSR 96-8p (emphasis in original).

The ALJ's residual functional capacity finding satisfied these requirements. Contrary to claimant's suggestion, the finding was far from conclusory. The ALJ described in great detail the facts and evidence that supported his conclusion. He evaluated the credibility of claimant's subjective complaints, resolved inconsistencies in the medical records, assigned appropriate weights to various medical opinions, and explained the effects of claimant's impairments on her ability to work on a sustained basis.

**E.      Hypothetical Question to the Vocational Expert**

Claimant next contends that the ALJ's decision was not supported by substantial evidence because the ALJ did not include of all her impairments in the hypothetical question posed to the vocational expert during the administrative hearing. *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*)) ("'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"). According to claimant, if the ALJ had included the additional impairments of being off task 20% of each workday and lying down two or more hours during a workday, she would have been found disabled.[7] Even so,

---

[7] *See id.* at 40.

claimant stops short of actually explaining why those two additional limitations should have been imposed. Her conclusory argument is not sufficient to satisfy her burden of establishing a disability. As discussed in the following section, the ALJ properly rejected claimant's subjective complaints regarding concentration problems and the need to rest during the day.

F.  **Subjective Complaints**

Claimant also asserts that the ALJ improperly considered her subjective complaints of pain and related symptoms, including a need to be off task 20% of each work day and a need to lie down for two or more hours during a work day. To demonstrate that pain or another subjective symptom renders her disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ in the present case properly applied these legal principles. He found that claimant's medically determinable impairments could reasonably have been expected to produce the symptoms claimant alleged, but that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence.[8] That conclusion was in accordance with applicable law. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

The ALJ also adequately articulated reasons to support his findings. He reasoned:

> The claimant's complaints of disabling pain are not supported by the objective findings. Diagnostic imaging has revealed no significant abnormalities to explain the claimant's alleged symptoms, indicating only minimal to mild arthritic changes . . . . The claimant exhibits tenderness at times associated with degenerative disc disease and osteoarthritis, but she maintains a normal gait with full strength, sensation, and range of motion . . . . Although she complains of severe pain when given the ten-point pain scale, she describes her pain as mild to moderate at worst when seeking emergency treatment . . . . The claimant alleged that she lies down for most of the day due to medication side effects, but there is no indication within the treatment notes that she has reported any such side effects to her primary care physician . . . . This allegation is also inconsistent with her reports of a

---

[8] Tr. 93.

16

moderate activity level and ongoing exercise . . . . Moreover, there is no objective support for her allegations of disabling mental symptoms. The claimant has been noted to demonstrate inadequate attention at only one encounter during the relevant period, undermining her complaints of an inability to concentrate . . . . She has also gone without mental health treatment for much of the relevant period, but she generally demonstrates an appropriate mood and affect with memory intact . . . .

Tr. 93-94 (citations to the record omitted).

Claimant contends that those findings were not supported by substantial evidence because she reported pain scores of 8 and 9 during two visits to the emergency room during 2015 and 2106.[9] She is correct about those two pain scores, but experiencing severe pain on two isolated occasions is not sufficient to establish an inability to work because of pain. Claimant also points out that she has received a diagnosis of fibromyalgia, a condition that does not show up on diagnostic imaging. As discussed above, however, that diagnosis does not support a finding of disability. The ALJ's findings regarding the consistency of claimant's subjective complaints with the remainder of the record were supported by substantial evidence.

## G. Medication Side Effects

Claimant testified that she has a low tolerance for medications, and her medications make her drowsy. She begins to feel the side effects of the medication approximately thirty minutes after she takes them, and the effects last approximately

---

[9] *See* Tr. 1339, 1344.

five or six hours, or until it is time to take the next dose.[10] She asserts that the ALJ failed to consider or discuss the side effects of her medications in assessing her residual functional capacity. That is not an accurate statement. The ALJ specifically mentioned claimant's testimony that she had to lie down during the day because her medications cause drowsiness and difficulty functioning.[11] He also noted that claimant had not reported troublesome side effects to any of her health care providers. Thus, the ALJ properly considered the effect of claimant's medication side effects on her ability to perform gainful work activity, and his decision was supported by substantial evidence.

**H.     Conclusion**

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

DONE this 7th day of November, 2018.

_____
United States District Judge

---

[10] Tr. 122-23.

[11] Tr. 91.